UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

IBETO PETROCHEMICAL INDUSTRIES, LTD.,

            Plaintiff,

  vs.

M/T "BEFFEN", her engines, boiler, tackle, equipment, etc., *in rem*, and BRYGGEN SHIPPING AND TRADING A/S, *in personam*,

            Defendants.

---

: DOCKET NO.: 05-CV-2590 (SAS)

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION

HILL RIVKINS & HAYDEN LLP
Attorneys for Plaintiff
45 Broadway, Suite 1500
New York, New York 10006
Tel: (212)-669-0600
Fax: (212)-669-0699

Of Counsel:
Keith B. Dalen (KD-4997)

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... ii

PRELIMINARY STATEMENT............................................................................. 1

POINT I
GRANTING PLAINTIFF"S VOLUNTARY MOTION TO DISMISS
WILL MOOT DEFENDANT'S ARGUMENTS.................................................... 2

POINT II
A STAY PENDING ARBITRATION IS NOT WARRANTED............................ 3

POINT III
EVEN UNDER DEFENDANT'S OWN REASONING A DECLARATION
OF LIMITED LIABILITY IS NOT WARRANTED............................................. 4

POINT IV
AN ANTI-FOREIGN SUIT INJUNCTION IS NOT WARRANTED
UNDER SECOND CIRCUIT STANDARDS AND ALL CASES
CITED BY DEFENDANT IN FAVOR OF THIS PROPOSITION ARE
DISTINGUISHABLE.............................................................................................. 6

POINT V
PLAINTIFF FILING SUIT IN NIGERIA IS NOT FORUM SHOPPING............. 13

CONCLUSION........................................................................................................ 15

TABLE OF AUTHORITIES

RULES

Fed. R. Civ. P. 41(a)(2).................................................................................... 2

Fed. R. Civ. P. 12(b)(3).................................................................................... 4


CASES

*Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161 (5th Cir. 1992) ....................... 4

*American Home Insurance Corp. v. The Insurance Corp. of Ireland, Ltd.*,
603 F.Supp. 636 (S.D.N.Y. 1984) ................................................................. 9,10

*Capon v. Ladenburg, Thalman Co.*, 92 Fed.Appx. 400,
2004 WL 42380 (9th Cir. 2004) ....................................................................... 3

*Chase Manhattan Bank v. Iran*, 484 F.Supp. 832 (S.D.N.Y. 1980) ....................... 8,9

*Cheeseman v. Carey*, 485 F.Supp. 203 (S.D.N.Y. 1980) ..................................... 13

*China Trade and Development Corp. v. M.V. Choong Yong*,
837 F.2d 33 (2d Cir. 1987) ........................................................................ 8,9,10

*Cliffs-Neddrill Turnkey International-Oranjestad v. M/T Rich Duke*,
734 F.Supp. 142 (D.Del. 1990) ...................................................................... 11

*Compagnie Des Bauxites De Guinea v. Insurance Co.
of North America*, 651 F.2d 877 (3d Cir. 1981) ................................................. 11

*Conlon v. Sea-Land Service, Inc.*, 1995 WL 20321 (S.D.N.Y. 1995) ..................... 13

*Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925 (3d Cir. 1941) ............................ 11

*Farrell Lines, Inc. v. Ceres Terminals Inc.*, 161 F.3d 115 (2d Cir. 1998) ..... 4,5,6,7,10,13

*Farrell Lines Inc. v. Columbus Cello-Poly Corp.*, 32 F.Supp.2d 118,
(S.D.N.Y. 1997) ........................................................................................... 10

*Fedmet Corp. v. M/V BUYALYK*, 194 F.3d 674 (5th Cir. 1999) ............................ 4

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947) ............ 13

*International Fashion Products B.V. v. Calvin Klein, Inc.*,
1995 WL 92321, 95-CV-0982(JFK), 1995 U.S. Dist. Lexis 2598
(S.D.N.Y. 1995) ............................................................................... 6,7

*Marubeni Am. Corp. v. M/V OHFU*, 1996 A.M.C. 1051,
1996 WL 84485 (S.D.N.Y. 1996) ......................................................... 4

*SG Avipro Finance Ltd. v. Cameroon Airlines*, 2005 WL 1353955,
05-CV-655(LTS), 2005 U.S. Dist. Lexis 11117 (S.D.N.Y. June 8, 2005) ................ 6,7

*Son Shipping Co. v. DeFosse & Tanghe*, 199 F.2d 687 (2d Cir. 1952) ...................... 7

PRELIMINARY STATEMENT

The facts of this case are fully set forth in plaintiff's memorandum of law in support of its motion to dismiss and are reproduced here for the sake of convenience.

This action involves a cargo of petroleum products that was transported onboard the M/T Beffen from Paulsboro, New Jersey to Lagos, Nigeria arriving on or about March 5, 2004. Upon arrival of the vessel the cargo was observed to be damaged. The plaintiff, receiver/assured, commenced suit against the vessel and her owners in the Nigerian Federal Court on or about March 19, 2004. The M/T BEFFEN was subsequently arrested and security was posted with the Federal High Court of Nigeria by the vessel's P & I Club in the form of a bank guarantee issued by the Union Bank of Nigeria on or about July 8, 2004. The case in Nigeria remains pending and is being prosecuted by counsel. Negotiations began with the vessel's P & I Club in an attempt to settle the case and obtain new and substitute security. While the settlement negotiations were going forward and while plaintiff was awaiting word from counsel in Nigeria as to the status of the case, on March 5, 2005, plaintiff demanded arbitration in London and commenced suit in New York with the sole purpose of protecting the time for suit. Plaintiff advised the vessel's P & I Club representatives in New York that Plaintiff intended to proceed with the Nigerian action. Plaintiff instructed counsel in London to discontinue the action in London, which was done. It was also the plaintiff's intention to dismiss the present action pending before this Court, however before this could be done a copy of the Answer to the Complaint was served upon plaintiff.

## POINT I
### GRANTING PLAINTIFF"S VOLUNTARY MOTION TO DISMISS WILL MOOT DEFENDANT'S ARGUMENTS

This Court is presently presented with two motions to dismiss. The defendant, in its memorandum of law, spends just over six pages arguing that this Court is an improper forum and that plaintiff should not be pursuing its grievances here. Plaintiff is seeking a voluntary dismissal, subject to the mandatory consent of this Court; thus, granting plaintiff's motion would render consideration of most of defendant's motion superfluous. However, the defendant, while on the one hand arguing that this Court should dismiss *or* stay because the Southern District of New York is an improper venue also asks the court prior to so ordering, to also: (1) declare the parties subject to binding arbitration in London, (2) declare its liability limited to $500 under U.S. COGSA, and (3) enjoin legal proceedings in a sovereign nation, specifically Nigeria, wherein an action was first filed.

This Court has wide discretion to grant plaintiff's voluntary dismissal under Federal Rule of Civil Procedure 41(a)(2) since the defendant has not raised any *legitimate* counterclaims (the Court's attention is respectfully directed to Point II of plaintiff's memorandum of law in support of its motion to dismiss the present case). On the other hand, were the Court to accept defendant's invitation to enjoin proceedings in Nigeria, the Court will involve itself in issues of international comity as well as a five step inquiry endorsed by the Second Circuit in determining whether an injunction should issue. If the court accepts the request of defendant to grant declaratory relief limiting its liability to $500 prior to directing the parties to arbitration, the process will run counter to defendant's own argument that *all* disputes and *all* issues in connection with the voyage at issue be resolved in London arbitration. Additionally, determining whether liability is

2

limited to $500 will also entail speculating as to how London arbitrators applying English law would decide whether or not, as a contractual term, U.S. COGSA and its limitations of liability apply.

While the court has the power to enjoin, grant declaratory relief, and compel arbitration, these powers are to be used sparingly. The Court has just as much discretion to grant plaintiff's voluntary dismissal and defendant demonstrates no substantial reason why plaintiff's request should not be granted.

## POINT II
## A STAY PENDING ARBITRATION IS NOT WARRANTED

Plaintiff's voluntary dismissal, if granted, will moot the fatuous and complex arguments presented by the defendant. See *Capon v. Ladenburg, Thalman Co.*, 92 Fed.Appx. 400, 2004 WL 42380 (9th Cir. 2004). In *Capon* the court granted plaintiff's motion for voluntary dismissal and thus declined to consider the defendant's competing motion to compel arbitration. The court stated, "[s]ince this action has been dismissed, plaintiff may not pursue his claims in this forum. Should plaintiff choose to abandon his claims by failing to pursue arbitration, that is his prerogative." *Id.* at 401-402. "While it is true that the FAA compels arbitration of claims against an unwilling defendant or requires that a plaintiff pursue claims through arbitration rather than litigation in court, the FAA does not compel a plaintiff to pursue arbitration rather than not pursuing the claims at all." *Id.* at 402.

Similarly, this court should grant plaintiff's motion for a voluntary dismissal and thus avoid a quagmire of, inter alia, issues of international comity, application of US law as a contractual term via foreign law, and incorporation of charter party terms in bills of

3

lading. In the alternative, should the court decline to grant plaintiff's motion the court should *dismiss* the present suit for improper venue under Fed. R. Civ. P. 12(b)(3) as opposed to ordering a *stay* of this action pending arbitration. See *Marubeni Am. Corp. v. M/V OHFU*, 1996 A.M.C. 1051, 1056, 1996 WL 84485 (S.D.N.Y. 1996) ("The court may dismiss an action if all the claims in that action are arbitrable"); *Fedmet Corp. v. M/V BUYALYK*, 194 F.3d 674, 678 (5th Cir. 1999) ("If all of the issues raised before the district court are arbitrable, dismissal of the case is not inappropriate")(citing *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992). In any potential scenario it would be plaintiff who would need the safeguard of retained jurisdiction via a stay in order to enforce any eventual award in this district. Plaintiff requests a dismissal and defendant, in the alternative, also seeks a dismissal for improper venue arguing this dispute is subject to arbitration. Accordingly, should the Court deny plaintiff's motion for voluntary dismissal, defendant's motion to dismiss for improper venue should be granted as opposed to issuing a stay.

## POINT III
### EVEN UNDER DEFENDANT'S OWN REASONING A DECLARATION OF LIMITED LIABILITY IS NOT WARRANTED

Defendant argues under U.S. law that its liability is limited to $500, however it cites no authority as to why this court should exercise its discretion and grant declaratory relief. As previously stated in plaintiff's memorandum of law in support of its motion to dismiss, this portion of defendant's motion is merely a defense interposed as a counterclaim. In a case cited by defendant in an unrelated part of its memorandum of law, *Farrell Lines, Inc. v. Ceres Terminals Inc.*, 161 F.3d 115 (2d Cir. 1998), the court

4

granted declaratory relief holding that the carrier's liability was limited to $500 under U.S. COGSA and enjoining defendants from pursuing a *subsequently* filed recovery action in Italy where defendant shipper was plaintiff. *Farrell Lines* is readily distinguishable from this case in that the forum selection clause in the bill of lading provided for jurisdiction in the Southern District of New York, the parties to the suit were the carrier and shipper respectively both of whom negotiated the contract of carriage, and suit was brought in Italy *subsequent* to the New York proceedings to avoid the choice of forum clause. Since defendants had agreed to New York jurisdiction and thus recovery was to be governed by U.S. law in New York, and suit was first filed in New York, it was proper for the court to exercise its discretion and grant declaratory relief enjoining the Italian proceedings and declaring liability limited to $500.

However, in the present case the purported forum selection clause in the charter party, if enforceable, provides for resolution not in the Southern District of New York, but rather in London arbitration. If this court is prepared to make the determination that London arbitration is binding between the carrier and a non-signatory to the charter party, then the dispute is surely also to be governed by English law. Whether or not the defendant is correct in its treatment of "customary freight unit" and an entire parcel constituting a single package under U.S. law (see defendant's memorandum of law Point II), this is a substantive argument referable to arbitration should the arbitration clause be binding. If this Court were to accept defendant's invitation to declare its liability limited to $500 under U.S. COGSA it would be inconsistent with defendant's very argument that this case should be dismissed for improper venue and that the dispute should be resolved by arbitrators (who are incidentally bound by British law and would thus apply U.S.

COGSA only as a contractual term, if at all). Thus, at best, even under the logic of defendant's own memorandum of law, the issue of whether carrier's liability is limited to $500 under U.S. COGSA is one to be determined by the arbitrators under English law and is an argument that this court should not presently entertain.

<u>POINT IV</u>
<u>AN ANTI-FOREIGN SUIT INJUNCTION IS NOT WARRANTED UNDER SECOND CIRCUIT STANDARDS AND ALL CASES CITED BY DEFENDANT IN FAVOR OF THIS PROPOSITION ARE DISTINGUISHABLE</u>

Defendant cites *SG Avipro Finance Ltd. v. Cameroon Airlines*, 2005 WL 1353955, 05-CV-655(LTS), 2005 U.S. Dist. Lexis 11117 (S.D.N.Y. June 8, 2005), *Farrell Lines v. Ceres Terminals, Inc.*, and *International Fashion Products B.V. v. Calvin Klein, Inc.*, 1995 WL 92321, 95-CV-0982(JFK), 1995 U.S. Dist. Lexis 2598 (S.D.N.Y. 1995), three cases where anti-foreign suit injunctions were issued against parallel foreign actions, in support of its argument that this Court should enjoin proceedings in the Nigerian Federal Court. All three cases cited by defendant are grounded by factual scenarios readily distinguishable from the present case, and are thus inapplicable. In *Farrell Lines v. Ceres Terminals* it was defendants who filed a second suit abroad. In *Cameroon Airlines* the written opinion is insufficient to discern which case (domestic or foreign) was filed first, but it is likely that an action was filed in Cameroon subsequent to the New York action because it was the defendant in the New York action that was plaintiff in a Cameroon action. In contrast, here the plaintiff brought suit in both locations.

In both *Farrell Lines* and *International Fashion Products v. Calvin Klein* forum selection clauses in contracts signed by both parties called for jurisdiction in the Southern

6

District of New York, and the respective judges issued anti-foreign suit injunctions because public policy favored enforcement of forum selection clauses and the second suits abroad attempted to oust the district court of jurisdiction granted by forum selection clauses in the relevant contracts. In contrast, the present case does not involve a New York/Southern District jurisdiction clause and there is no forum selection clause in a contract to which plaintiff is a signatory.

It is true that courts hold third-party bill of lading holders to arbitration clauses to which they are non-signatories where a charter party with an arbitration clause is incorporated by reference in the bill of lading. See e.g., *Son Shipping Co. v. DeFosse & Tanghe*, 199 F.2d 687 (2d Cir. 1952) (cited by defendant in its memorandum of law). However, this view is not universally accepted by foreign courts and jurists. Plaintiff respectfully submits that the strong public policy in favor of arbitration, triggering an injunction in *Cameroon Airlines*, is tempered where a party attempts to hold a non-signatory to the arbitration clause.

Admittedly, in *Calvin Klein* it was actually the plaintiff maintaining parallel actions in New York and the Netherlands that was enjoined from proceeding abroad. However, in that case the action was first filed in New York, and the court found that Calvin Klein, Inc. would suffer irreparable harm in having to defend two actions on the same subject on two continents and would possibly be subject to inconsistent judgments. In addition, there was an unequivocal forum selection clause calling for New York jurisdiction. On the contrary, in the present case the plaintiff is not trying to maintain two actions regarding the same subject; plaintiff seeks a voluntary dismissal of this action.

7

Further, it is not trying to litigate in Nigeria in contravention of a forum selection clause calling for New York jurisdiction.

Turning to discuss established legal standards regarding injunctions against foreign suits it has been stated by this court: "[t]he court clearly has such power, in appropriate circumstances. However, this power should be used sparingly. For instance, such an injunction can be entered where the second action is vexatious and designed to avoid the process of the first action." *Chase Manhattan Bank v. Iran*, 484 F.Supp. 832, 836 (S.D.N.Y. 1980) (citations omitted). In *Chase v. Iran* the defendant Bank Markazi Iran brought suit in England against Chase when Chase allegedly transferred funds of Bank Markazi from London to New York in the wake of President Carter's declaration authorizing persons and entities with debts owed by Iran and Iranians to offset those debts with property and funds then held. Chase later filed suit in the Southern District of New York and sought an injunction against Bank Markazi proceeding in England. The court found that such an injunction was not warranted since: "[t]he London action by Bank Markazi was commenced prior to the American action. Since the London action deals with substantial bank accounts in Chase London, the action can hardly be considered to involve a vexatious or unreasonable choice of forum." 484 F.Supp. at 835. The court added, "[f]rom a fair and objective legal standpoint, the crucial connection of this controversy with England must be recognized." *Id.*

A relevant Second Circuit case involved a situation where soybean cargo was damaged while on-route from the United States to China onboard a Korean vessel that grounded. The shipper attached a sister vessel in California and negotiated personal jurisdiction over the defendant shipowner in New York. Its cargo damage claim was

8

presented before the Southern District. Subsequently, the defendant shipowner filed a declaratory action in its home country of Korea seeking a determination that it was not liable for the cargo loss. The shipper/plaintiff in the New York action sought an injunction directed against the Korean proceedings. The Court of Appeals determined that (assuming for purposes of discussion that the court sitting in admiralty had the power to issue injunctions), "[t]he power of federal courts to enjoin foreign suits by persons subject to their jurisdiction is well-established. The fact that the injunction operates only against the parties, and not directly against the foreign court, does not eliminate the need for due regard to principles of international comity, because such an order effectively restricts the jurisdiction of the court of a foreign sovereign[.] Therefore, an anti-foreign-suit injunction should be 'used sparingly', and should be granted 'only with care and great restraint.'" *China Trade and Development Corp. v. M.V. Choong Yong*, 837 F.2d 33, 35-36 (2d Cir. 1987). "Since parallel proceedings are ordinarily tolerable, the initiation before a foreign court of a suit concerning the same parties and issues as a suit already pending in a United States court does not, without more, justify enjoining a party from proceeding in the foreign forum." *Id.*

The Court of Appeals agreed with Judge Motley, the judge below, in the basic approach to determining whether an injunction should issue. Judge Motley followed a five step inquiry announced in an earlier Southern District case *American Home Insurance Corp. v. The Insurance Corp. of Ireland, Ltd.* Factors to consider include: "(1) frustration of a policy in the enjoining forum; (2) [whether] the foreign action would be vexatious; (3) [whether there is] a threat to the issuing court's in rem or quasi in rem jurisdiction; (4) [whether] the proceedings in the other forum prejudice other equitable

considerations; or (5) adjudication of the same issue in separate actions would result in delay, inconvenience, expense, inconsistency, or a race to judgment." 603 F.Supp. 636, 643 (S.D.N.Y. 1984). However, the Second Circuit in *M/V Choong Yong* cautioned that, "an anti-suit injunction grounded on these additional factors alone [meaning "vexatiousness" and "race to judgment"] would tend to undermine the policy that allows parallel proceedings to continue and disfavors anti-suit injunctions." 837 F.2d at 36.

Stated differently, "[t]he Second Circuit has held that an injunction may issue only where the first or third factor--the foreign proceeding presents a threat to the public policy or to the jurisdiction of the enjoining forum--is present. *China Trade*, 837 F.2d at 36." *Farrell Lines Inc. v. Columbus Cello-Poly Corp.*, 32 F.Supp.2d 118, 130 (S.D.N.Y. 1997), aff'd sub nom, *Farrell Lines v. Ceres Terminals, Inc.*, 161 F.3d 115 (2d Cir.1998).

The defendant alleges that plaintiff's maintaining suit in Nigeria is "designed" to frustrate the jurisdiction and public policies of this forum, however its argument ignores the fact that suit was first brought in Nigeria and only subsequently filed in New York as a precaution to protect time for suit while the parties continued negotiations to avoid litigation and before the nuances of the many legal ramifications were fully explored.

<u>Five Factors</u>

Plaintiff submits that in this case, an anti-suit injunction is clearly not warranted under the five factor standard followed by the *Farrell Lines v. Ceres Terminals, Inc.*, *China Trade and Development Corp. v. M.V. Choong Yong*, and *American Home Insurance Corp. v. The Insurance Corp. of Ireland, Ltd.* line of cases. Addressing each in turn:

10

(1) Frustration of a policy in the enjoining forum: the public policy favoring arbitration should be tempered where one of the parties is a non-signatory to the document containing the alleged arbitration agreement. Moreover, public policy favoring retention of cases in order to apply U.S. law is less applicable where the parties to the litigation are both non-domestic corporations and other factors indicate greater subject matter contacts to other nations with concurrent jurisdiction.

(2) Whether the foreign action is vexatious: the following factors indicate that the action in Nigeria is not vexatious-

(a) The action was first filed by the plaintiff in Nigeria. While the "first filed" rule has been said to only apply to situations where suits are pending before two federal district courts,[1] the factor should weigh against finding vexatiousness.

(b) Plaintiff is a Nigerian corporation and holder of the bill of lading.

(c) The cargo at issue was delivered to Nigeria, and the voyage in question terminated in Lagos, Nigeria.

(d) Witnesses to the unloading and damaged condition of cargo are located in Nigeria.

(e) The voyage charter party ended in Nigeria.

---

[1] A first filed rule has been articulated in reference to parallel proceeding in co-equal jurisdictions within the United States. Where for example the same matters involving the same parties is being litigated in two separate federal districts, the court in which an action was first filed may issue an injunction preventing duplicative proceedings in the latter jurisdiction. It has been urged by various parties in past actions to extend the first filed rule to the international arena however, "[t]he rule has never been applied, and in fact it was never meant to apply where the two courts involved are not courts of the same sovereignty." *Compagnie Des Bauxites De Guinea v. Insurance Co. of North America*, 651 F.2d 877, 887 n. 10 (3d Cir. 1981) (citing *Crosley Corp. v. Hazeltine Corp.*, 122F.2d 925, 929 (3d Cir. 1941). "When related cases are before two different sovereigns the appropriate procedure is to permit both jurisdictions to proceed, with any decision of one becoming *res judicata* on the other. *Cliffs-Neddrill Turnkey International-Oranjestad v. M/T Rich Duke*, 734 F.Supp. 142 (D.Del. 1990).

(f) The vessel M/T Beffen was arrested in Nigeria.

(g) The security posted to release the vessel in Nigeria is under the jurisdiction of the Nigerian Federal Court.

(h) The vessel M/T Beffen is owned by a Norwegian corporation.  Finally,

(i)  The only connection with the United States is the origin of the goods and the loading of the cargo in New Jersey.

(3) Whether there is a threat to the court's in rem or quasi in rem jurisdiction: this provision is inapplicable as the court does not have either type of jurisdiction.

(4) Whether the proceedings in the other forum prejudice other equitable considerations: The lettered factors listed in response to "factor 2", *supra* are equally applicable to finding that the Nigerian action is compatible with notions of equity and fairness.

(5) Whether adjudication of the same issues in different forums would result in delay, inconvenience, expense, inconsistency or race to judgment: Plaintiff is presently requesting a dismissal of this action and if granted would eliminate the situation of parallel proceedings.

Based upon the foregoing, it is manifest that the action in Nigeria was not brought to avoid the public policies of this forum, was non-"vexatious", does not threaten this Court's in rem jurisdiction (which is, in any event, inapplicable to the present case), and was not an attempt to delay, tax, or inconvenience the defendant.  It was natural for the plaintiff to file its claims in Nigeria; as counsel for plaintiff has previously stated (see Willoughby Aff. in support of plaintiff's motion to dismiss, cl. 9) suit was brought in the Southern District of New York solely as a precaution to protect time for suit.  Defendant

attempts to enlist the equitable powers and discretion of this Court in issuing an injunction by mischaracterizing the nature and course of plaintiff's actions.

While this Court clearly has the power, at its discretion, to issue injunctions even while sitting in admiralty, (see *Farrell Lines v. Ceres Terminals, Inc.*, 161 F.3d 115), plaintiff respectfully submits this is not the case in which that discretion should be so exercised.

## POINT V
## PLAINTIFF FILING SUIT IN NIGERIA IS NOT FORUM SHOPPING

As stated in *Conlon v. Sea-Land Service, Inc.*, 1995 WL 20321 (S.D.N.Y. 1995):

> There is nothing *per se* improper in an attorney's choosing between available venues based on his calculation that the selection of one may benefit his client because the courts in that district may be more favorably disposed to his legal theory. As former Judge Sofaer has noted:
>> Forum shopping is no more an evil than any other tactical determination a party makes in its behalf. Any competent lawyer chooses a forum with his or her client's interest in mind. This is undoubtedly why Justice Jackson [in *Gulf Oil v. Gilbert*] made clear that a party had to do more than forum shop to justify invoking *forum non conveniens;* the choice of forum must have been made "with some harassment" in mind to have justified dismissal of the action.
>
> *Cheeseman v. Carey,* 485 F.Supp. 203, 215 (S.D.N.Y.) (citing *Gulf Oil Corp. v. Gilbert,* 330 U.S. at 507), *remanded on other grounds,* 623 F.2d 1387 (2d Cir.1980). Ansul makes no showing that plaintiff chose this district for an improper purpose. As noted in *Cheeseman,*
>> Had plaintiff[ ] selected this forum to avoid specific precedents in the Northern District, the case for a transfer would have been far stronger. Just as this district's local rules are designed to prevent shopping for individual judges--and thereby for the application of some anticipated view of the law-- efforts to select one district to avoid or to obtain specific rulings of another district court should be disfavored and discouraged.

*Id.* at *3-*4. While *Conlon* and the cases it cites analyze forum shopping in deciding whether to transfer for forum non-conveniens, the principles nonetheless are helpful as a prism through which to view defendant's attempt to characterize plaintiff's actions as impermissible forum shopping.

13

While the plaintiff may view the Nigerian courts as being more receptive to its legal arguments and may hope Nigerian court may determine that U.S. COGSA does not apply or that the London arbitration clause is unenforceable under Nigerian law, plaintiff's filing of suit in Nigeria does not raise the specter of impermissible forum shopping in that the purpose of bringing suit in Nigeria was not to undermine the jurisdiction and policy of the United States. While it is acknowledged that there is no "first filed" rule following international parallel proceedings, the fact that suit was first filed in Nigeria should be conclusive that plaintiff choice of forum is not the kind of blameworthy conduct which defendant alleges. Defendant knowingly posted a bond as security in Nigeria after the vessel was arrested, therefore exposing it to the *in rem* jurisdiction of the Nigerian Federal Court. It is disingenuous to now claim that suit in Nigeria is unfair, a surprise, or "forum shopping".

As stated, *supra*, nearly all contacts (were this a choice of law or forum non-conveniens question) are with Nigeria. The only connection this case has with the United States is that the cargo originated in the United States and was loaded on-board in Paulsboro. In fact, the shipper is not even a party to this case. Were the present dispute to involve the issue of a motion to transfer for forum non-conveniens, the analysis would determine that Nigeria and not New York is the most convenient forum.

The claim of jurisdiction by the Federal Court of Nigeria over the parties and the subject matter is no less legitimate than that of this Court, and is probably more so, considering: Nigeria is where the cargo was delivered and unloaded damaged, where suit was first filed and *in rem* jurisdiction obtained, plaintiff is a Nigerian corporation, defendant shipowner is a foreign corporation, practically all relevant events took place in

Nigeria, all relevant witnesses except the vessel crew are located in Nigeria, and a guarantee to release the vessel M/T Beffen is posted in Nigeria.

## CONCLUSION

For the foregoing reasons plaintiff's motion to dismiss without prejudice should be granted and defendant's cross motion for declaratory relief, a stay or dismissal pending arbitration, and an anti-foreign suit injunction should be denied.

Dated:    New York, New York
          September 29, 2005

                              Respectfully submitted,
                              HILL RIVKINS & HAYDEN LLP
                              Attorneys for Plaintiff

                              By: _____
                                  Keith B. Dalen (KD-4997)
                                  45 Broadway, Suite 1500
                                  New York, New York 10006
                                  (212) 669-0600

15