UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X    05 CIV 2590 (SAS)
IBETO PETROCHEMICAL INDUSTRIES,
LTD.,

                         Plaintiff,

          -against-

M/T "BEFFEN", her engines, tackle,
boiler, etc  *in rem;* and BRYGGEN
SHIPPING AND TRADING A/S,  *in
personam,*

                         Defendants.
----------------------------------------X


**REPLY MEMORANDUM OF LAW**


Edward A. Keane (EK 1398)
Garth S. Wolfson (GW 7700)

     Of Counsel

                    **MAHONEY & KEANE, LLP**
                    Attorneys for Defendant
          BRYGGEN SHIPPING AND TRADING A.S.
                111 Broadway, Tenth Floor
                New York, New York 10006
                     (212) 385-1422

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES..........................................ii

ARGUMENT......................................................1

POINT I.      PLAINTIFF HAS CONCEDED THAT THIS MATTER
              IS SUBJECT TO MANDATORY AND EXCLUSIVE
              ARBITRATION IN LONDON AND THAT THE COGSA
              LIMITATION OF LIABILITY APPLIES..............1

POINT II.     WHILE GRANTING BRYGGEN'S MOTION FOR
              SUMMARY JUDGMENT ON ITS COUNTER-CLAIMS
              WOULD SURELY MOOT PLAINTIFF'S MOTION FOR
              A DISMISSAL WITHOUT PREJUDICE, THE REVERSE
              IS CERTAINLY NOT THE CASE....................2

POINT III.    WHETHER BY WAY OF DISMISSAL OR STAY, AN
              ORDER ENFORCING THE ARBITRATION AGREEMENT
              IS WARRANTED.................................3

POINT IV.     IN THE ALTERNATIVE, A DECLARATION OF
              LIMITED LIABILITY IS ENTIRELY PROPER.........4

POINT V.      THE PRECEDENT IN THIS CIRCUIT NOT ONLY
              ALLOWS BUT ENCOURAGES AN ANTI-SUIT
              INJUNCTION UNDER THE CIRCUMSTANCES AT BAR.....5

POINT VI.     PLAINTIFF'S TRUE PURPOSE IN COMMENCING
              PROCEEDINGS IN THREE DIFFERENT FORA IS
              APPARENT FROM THE RECORD AND IRRELEVANT TO
              THE COURT'S INQUIRY, IN ANY EVENT............10

CONCLUSION...................................................12

## TABLE OF AUTHORITIES

Page

*Cases:*

Abrama v. City of New York, 54 Fed. Appx. 708,
2002 U.S. App. LEXIS 27305 (2d Cir. Jan. 6, 2002) ................1

Capon v. Landenburg, Thalman Co.,
2004 WL 42380 (9th Cir. 2004) .....................................4

Chase Manhattan Bank, N.A. v. State of Iran,
484 F. Supp. 832 (S.D.N.Y. 1980) .................................7

China Trade and Development Corp. v. M.V. Chong Yong,
837 F.2d 33 (2d Cir. 1987) .......................................8

Farrell Lines Inc. v. Columbus Cello-Poly Corp., 32 F. Supp.
2d 118 (S.D.N.Y. 1997), aff'd sub nom, Farrell Lines Inc. v.
Ceres Terminals Inc., 161 F.3d 115 (2d Cir. 1998) ..........4,5,8,9

Gubitosi v. Kapica, 154 F.3d 30 (2d Cir. 1998) ...................1

International Fashion Prod's, B.V. v. Calvin Klein, Inc., No.
95 Civ. 0982 (JFK), 1995 U.S. Dist. LEXIS 2598 (Mar. 7, 1995)...5,8

National Material Trading v. M/V Kaptan Cebi,
1997 U.S. Dist. LEXIS 24027, 1998 A.M.C. 201 (D.S.C. 1997) ........6

Paramedics Electromedicina Comercial, Ltda.,
369 F.3d 645 (2d Cir. 2004) .....................................8,9

Richardson Greenshields Sec. v. Lau,
825 F.2d 647 (2d Cir. 1987) ......................................3

Salim Oleochemicals v. M/V Shropshire,
278 F.3d 90 (2d Cir. 2002) .......................................3

Securities and Exch. Comm'n v. Coletti, No. 97-6252,
1998 U.S. App. LEXIS 22156 (2d Cir. Aug. 21, 1998) ...............1

SG Avipro Finance LTD. v. Cameroon Airlines, No. 05 Civ.
655 (LTS), 2005 U.S. Dist. LEXIS 11117 (S.D.N.Y. Jun. 8, 2005)..5,8

*Statutes and Rules:*

9 U.S.C. §§ 3 and 201 <u>et seq.</u>..................................................12

Fed. R. Civ. P. 41(a)(2).........................................................2

46 U.S.C. § 1304(5)............................................................1,12

Fed R. Civ. P. 12(b)(3).........................................................12

Fed. R. Civ. P. 56.............................................................12

Local Rule 56.1(b)............................................................1

Local Rule 56.1(c)............................................................1

<u>REPLY ARGUMENT</u>

POINT I.        **PLAINTIFF HAS CONCEDED THAT THIS MATTER IS SUBJECT TO MANDATORY AND EXCLUSIVE ARBITRATION IN LONDON AND THAT THE COGSA LIMITATION OF LIABILITY APPLIES.**

It can not escape the Court's notice that plaintiff has presented no opposition whatsoever on the merits of BRYGGEN's counter-claims, <u>i.e.</u> that the dispute before the courts here and in Nigeria are required to be submitted to London arbitration, and that the limitation of liability called for under the United States Carriage of Goods by Sea Act (COGSA) should vastly reduce the amount of any judgment.  46 U.S.C. § 1304(5).  Indeed, as to the former, plaintiff has expressly stated that, "should the Court deny plaintiff's motion for a voluntary dismissal, defendant's motion to dismiss for improper venue should be granted."  (Memorandum of Law in Opposition to Defendant's Motion, at 4).  Moreover, plaintiff declined to even submit any statement pursuant to Local Rule 56.1(b), such that "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted."  Local Rule 56.1(c); <u>see also</u>, <u>Abrama v. City of New York</u>, 54 Fed. Appx. 708, 2002 U.S. App. LEXIS 27305 (2d Cir. Jan. 6, 2002); <u>Securities and Exch. Comm'n v. Coletti</u>, No. 97-6252, 1998 U.S. App. LEXIS 22156 (2d Cir. Aug. 21, 1998); <u>Gubitosi v. Kapica</u>, 154 F.3d 30 (2d Cir. 1998).

Essentially, plaintiff continues to raise the arguments previously presented in support of its motion for a dismissal without prejudice.  Accordingly, BRYGGEN respectfully refers the Court to, and incorporates herein, BRYGGEN's Memorandum of Law in

1

Opposition to plaintiff's Motion, as well as BRYGGEN's own motion papers, which previously addressed much of plaintiff's argument on the matter. Additional responses are provided below.

**POINT II.** **WHILE GRANTING BRYGGEN'S MOTION FOR SUMMARY JUDGMENT ON ITS COUNTER-CLAIMS WOULD SURELY MOOT PLAINTIFF'S MOTION FOR A DISMISSAL WITHOUT PREJUDICE, THE REVERSE IS CERTAINLY NOT THE CASE.**

Plaintiff asserts that, were the Court to grant plaintiff's motion for a voluntary dismissal pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure, BRYGGEN's motion would be moot. As discussed in BRYGGEN's prior papers, the motion should not be granted on many grounds. And, were plaintiff's motion to be granted, BRYGGEN's counter-claims would necessarily still remain for resolution. Fed. R. Civ. P. 41(a)(2). In fact, BRYGGEN may just as readily take the same position, since, were BRYGGEN's motion to be granted, plaintiff's motion would by all accounts be well-mooted.

More importantly, however, BRYGGEN fails to comprehend plaintiff's argument, that, just because plaintiff's motion, if successful, would moot BRYGGEN's, plaintiff's motion should be granted and BRYGGEN's denied. Both motions must, of course, be evaluated. Plaintiff argues that, "were the Court to accept defendants' invitation to enjoin proceedings in Nigeria, the Court will involve itself in issues of international comity as well as a five step inquiry endorsed by the second Circuit in determining whether an injunction should issue." (Memorandum of Law in Opposition to Defendant's Motion, at 2); see also id. at 3 ("[T]his court should grant plaintiff's motion for a voluntary dismissal and

2

thus avoid a quagmire of . . . issues . . .")). Plaintiff exaggerates the complexity involved in these proceedings. But, in any event, a motion properly before a Court is not merely an "invitation." See, <u>Richardson Greenshields Sec. v. Lau</u>, 825 F.2d 647, 652 (2d Cir. 1987). BRYGGEN's motion, like plaintiff's, should be addressed on the merits, and it is unseemly for plaintiff to overtly suggest that mere expediency should influence the Court's evaluation of those merits.

**POINT III.    WHETHER BY WAY OF DISMISSAL OR STAY, AN ORDER ENFORCING THE ARBITRATION AGREEMENT IS WARRANTED.**

Plaintiff strenuously urges the Court to dismiss, rather than stay, proceedings in response to BRYGGEN's motion. (Memorandum of Law in Opposition to Defendant's Motion, at 3-4). Clearly, plaintiff is hoping for an ambiguous order which might not indicate to the Nigerian Court that the United States proceedings resulted in a finding of mandatory and exclusive arbitration.

As stated in the letters exchanged in advance of the pre-motion conference, as well as BRYGGEN's motion papers, BRYGGEN simply does not care whether plaintiff's action is dismissed with prejudice or stayed. The only effective difference between the two concerns appellate subject matter jurisdiction over the order. See, generally, <u>Salim Oleochemicals v. M/V Shropshire</u>, 278 F.3d 90 (2d Cir. 2002). BRYGGEN seeks an anti-suit injunction to definitively deal with this matter. With respect to any other order, as long as it makes clear that the reason for the dismissal or stay is the requirement for London jurisdiction to the exclusion of other fora, BRYGGEN would be satisfied. Any other result would

resolve nothing.

As to the case of <u>Capon v. Landenburg, Thalman Co.</u>, 2004 WL 42380 (9th Cir. 2004), upon which plaintiff solely relies in arguing that BRYGGEN's arbitration claim should not prevent dismissal without prejudice, BRYGGEN, again, respectfully refers the Court to its Memorandum of Law in Opposition to Plaintiff's Motion, which deals with the issue in detail.

**POINT IV.      IN THE ALTERNATIVE, A DECLARATION OF LIMITED LIABILITY IS ENTIRELY PROPER.**

Plaintiff attempts to distinguish <u>Farrell Lines Inc. v. Columbus Cello-Poly Corp.</u>, 32 F. Supp. 2d 118 (S.D.N.Y. 1997), <u>aff'd sub nom</u>, <u>Farrell Lines Inc. v. Ceres Terminals Inc.</u>, 161 F.3d 115 (2d Cir. 1998), on the grounds that, in <u>Farrell Lines</u>, the foreign suit was filed subsequent to the United States action, and the forum-selection clause called for suit in the Southern District of New York rather than arbitration in London. However, even a cursory review of the <u>Farrell Lines</u> decision will make plain that these factual differences were not in the slightest respect material to the reasoning and holding of the <u>Farrell Lines</u> court. Indeed, the <u>Farrell Lines</u> court took pains to state that there need not even be "imminent danger of a suit in a United States court. Rather, there must be a controversy of sufficient immediacy that a ruling on the merits would substantially alleviate uncertainty surrounding the legal issues." <u>Id</u>. at 125. The declaratory judgment claims on the COGSA limitation of liability, as well as the anti-suit injunction, were entertained not because suit was filed first in any particular venue or because the bill of lading

4

selected any particular venue. The court, having jurisdiction over the controversy, was obliged to consider the claim because, "COGSA's protections reflect the important policy goal of limiting a carrier's liability when it is not apprised of the true value of the goods, so the carrier does not, in effect, function as an insurer of the goods." Id. at 130. It is this important public policy that guided the Farrell Lines court, and this very policy is exactly what has been placed at issue in this case.

**POINT V.**       **THE PRECEDENT IN THIS CIRCUIT NOT ONLY ALLOWS BUT ENCOURAGES AN ANTI-SUIT INJUNCTION UNDER THE CIRCUMSTANCES AT BAR.**

Again, plaintiff attempts to distinguish many of the cases cited in support of BRYGGEN's position by pointing out that, in some, the foreign action was commenced after the United States action, and that, in some, the forum-selection clause called for suit in New York, as opposed to arbitration in London. (Memorandum of Law in Opposition to Defendant's Motion, at 3-4) (citing SG Avipro Finance LTD. v. Cameroon Airlines, No. 05 Civ. 655 (LTS), 2005 U.S. Dist. LEXIS 11117 (S.D.N.Y. Jun. 8, 2005); Farrell Lines, 32 F. Supp. 2d at 118; International Fashion Prod's, B.V. v. Calvin Klein, Inc., No. 95 Civ. 0982 (JFK), 1995 U.S. Dist. LEXIS 2598 (Mar. 7, 1995)). No reasonable reading of these cases can justify the conclusion that these distinctions, to the extent they can be gleaned from their facts at all, factored into the courts' decisions in any meaningful way. These courts made perfectly plain that the anti-suit injunctions were warranted in order to protect the important United States policies of protecting forum-selection

and arbitration agreements and making sure that COGSA is honored. The applicability of these dispositive policy concerns to the case at bar is conceded and otherwise remains completely unchallenged by plaintiff.

Plaintiff also attempts to characterize itself as a non-party to the governing contract and asks the Court to disregard an ample line of binding precedent. Instead it would have this Court create a new rule of law to the effect that the strong public policy favoring enforcement of arbitration agreements should somehow no longer apply. The cases making no such exception for non-signatories claiming under the bill of lading are legion, <u>see</u>, BRYGGEN's Memorandum of Law in Support of Motion, at POINT I, and plaintiff has provided no cognizable justification for its position.

Moreover, plaintiff's attempt to redefine itself as an outsider to the contract of carriage is belied by the record. Plaintiff is identified as the notify party on the bill of lading. (Bill of Lading, Exhibit 2A to Landoey Declaration); <u>see also</u>, <u>National Material Trading v. M/V Kaptan Cebi</u>, 1997 U.S. Dist. LEXIS 24027, *12, 1998 A.M.C. 201 (D.S.C. 1997) ("NMT is specifically identified as the 'notify party' on the face of the bill of lading . . . Notice of incorporation of the terms of a charter party on this particular bill of lading are obvious and inescapable. That much would be obvious to even a stranger to the industry."). Plaintiff's own complaint judicially admits that "Plaintiff was the shipper, consignee or owner or otherwise had a proprietary interest

6

of and in the cargo as described in Schedule A, and brings this action on its own behalf and, as agents and trustees, on behalf of and for the interest of all parties who may be or become interested in the said shipment, as their respective interests may appear, and plaintiff is entitled to bring this action." (Complaint, Exhibit 1 to Landoey Declaration; accord, Nigerian Statement of Claim, Exhibit 5 to Landoey Declaration, at ¶ 6). Plaintiff's counsel has repeatedly stated in no uncertain terms that they "represent the owners of (and those entitled to sue in relation to) the above cargo (including but not limited to Chemlube International Inc., BNP Paribas (Suise) SA, Ibeto Petrochemical Industries, Ltd, the insurers of the cargo and the lawful holders of the Bills of Lading) in relation to all and any claims which have arisen under the above-captioned Bills of Lading." (letter dated March 4, 2005, Exhibit 3 to Landoey Declaration). Plaintiff's argument simply should not be countenanced, on the facts as well as the law.

Plaintiff next attempts to draw a parallel between the case at bar and the case of Chase Manhattan Bank, N.A. v. State of Iran, 484 F. Supp. 832 (S.D.N.Y. 1980), which declined to issue an anti-suit injunction. (Memorandum of Law in Opposition to Defendant's Motion, at 8). What plaintiff fails to mention is that the fundamental issue before Chase Manhattan court, as plaintiff concedes later in its Memorandum, was whether uncertainty regarding an English Court's consideration of a presidential blocking order relating to a transfer of funds impinged upon an important public policy of the United States. The court found otherwise. Chase

7

Manhattan, 484 F. Supp. at 835 ("Chase goes too far in urging that its controversy with Bank Markazi should be decided solely under American Law, in order to prevent evasion of the President's blocking order."). Such a scenario has no bearing whatsoever on the instant matter, which admittedly concerns at least two such important public policies that previous courts, including this Circuit's Court of Appeals, have unequivocally ruled easily justify the issuance of an anti-suit injunction. See, Paramedics Electromedicina Comercial, Ltda., 369 F.3d 645 (2d Cir. 2004); Farrell Lines, 161 F.3d at 115; SG Avipro, 2005 U.S. Dist. LEXIS 11117; Farrell Lines, 32 F. Supp. 2d at 118; International Fashion Prod's, 1995 U.S. Dist. LEXIS 2598.

Plaintiff urges the Court to apply the standard set forth in China Trade and Development Corp. v. M.V. Chong Yong, 837 F.2d 33 (2d Cir. 1987), which identified the either of two issues key to the analysis: "(A) whether the foreign action threatens the jurisdiction of the enjoining forum, and (B) whether strong public policies of the enjoining forum are threatened by the foreign action." (Memorandum of Law in Opposition to Defendant's Motion, at 9-10). BRYGGEN couldn't agree more. But China Trade did not involve the protection of the issuing court's ruling, did not involve an arbitration or forum-selection agreement, and did not involve the application of COGSA. China Trade, 837 F.2d at 33. In fact, the district court did not base its decision on either of the two factors the Court of Appeals deemed central to the issue of whether the anti-suit injunction should issue. Id.

8

In this case, with respect to the issue of whether the foreign action may be said to threaten the jurisdiction of the enjoining forum, this Court, in reaching a decision on whether to grant the anti-suit injunction, will necessarily have decided the threshold, and undisputed, issue of whether this matter is subject to mandatory and exclusive arbitration in London. Protection of that judgment alone warrants the anti-suit injunction. As the Second Circuit Court of Appeals has stated:

> An anti-suit injunction may be needed to protect the court's jurisdiction once a judgment has been rendered. The doctrine of res judicata, where applied, may obviate injunctive relief against re-litigation in a second forum; but a foreign court might not give res judicata effect to a United States judgment . . . [W]here one court has already reached a judgment--on the same issues, involving the same parties--considerations of comity have diminished force.

Paramedics, 369 F.3d at 654.

With respect to the issue of whether threats to the enforcement of arbitration agreements and COGSA implicate strong public policies, this Circuit's Court of Appeals has also definitively answered these questions in the affirmative. Farrell Lines, 161 F.3d at 116 ("For substantially the same reasons as those stated by the district court in its thoughtful and well-reasoned Opinion and Order, we hold that the district court . . . properly exercised its discretion in employing this power to enjoin the Defendants from pursuing the Italian action.").

In light of the above, which could not be plainer, plaintiff's sorry request to have this Court now create a different law should

9

be disregarded.  As discussed above, plaintiff's alleged distance
from the contract and the sequence in which the lawsuits were
commenced have no bearing on the analysis required of this Court,
and a ruling on BRYGGEN's counter-claims can not be avoided by way
of Rule 41(a)(2).  Nor do the questions before the Court; as well
as the vexatiousness of the foreign action, equitable
considerations, delay, and inconsistency; hinge upon the amount of
contacts the controversy might have with the foreign forum, and,
accordingly, plaintiff has not even attempted to provide any
support for the contention.  Obviously, plaintiff was constrained
to commence the foreign action in a forum where personal
jurisdiction could be obtained.  But that is simply not relevant to
the standard which plaintiff concedes governs this matter.  The law
could not be clearer that an anti-suit injunction should issue
under the uncontroverted facts now before the court.

**POINT VI.**      **PLAINTIFF'S TRUE PURPOSE IN COMMENCING PROCEEDINGS
                IN THREE DIFFERENT FORA IS APPARENT FROM THE RECORD
                AND IRRELEVANT TO THE COURT'S INQUIRY, IN ANY
                EVENT.**

No sworn testimony from an officer of plaintiff has been
submitted to suggest what plaintiff's purpose in commencing legal
actions on three different continents really was, and, in fact,
plaintiff has now admitted that "Plaintiff has made it no secret
that plaintiff's withdrawal of arbitration and efforts to see the
United States action dismissed without prejudice have been
perpetrated in an attempt to avoid the application of COGSA and its
limitation of liability."  (56.1 Statement, at ¶ 7).

10

Nonetheless, plaintiff argues that, "[w]hile the plaintiff may view the Nigerian courts as being more receptive to its legal arguments and may hope Nigerian court may determine that U.S. COGSA does not apply or that the London arbitration clause is unenforceable under Nigerian law, plaintiff's filing of suit in Nigeria does not raise the specter of impermissible forum shopping in that the purpose of bringing suit in Nigeria was not to undermine the jurisdiction and policy of the United States." (Memorandum of Law in Opposition to Defendant's Motion, at 14). But, this Court may assume <u>arguendo</u> that plaintiff's "purpose" was altogether benign, and it would still be completely irrelevant. The inquiry is not whether plaintiff intended to threaten an important United States policy; the inquiry is whether the foreign suit does, in fact, threaten an important United States policy. And prior courts in this Circuit have already ruled that protection of arbitration agreements and the COGSA limitation of liability do constitute just such strong public policies. Plaintiff's effort to have a foreign court "determine that U.S. COGSA does not apply," when it undisputedly does, should not be abetted by favoring plaintiff's application.

**CONCLUSION.**

WHEREFORE, BRYGGEN, again, urges the Court to grant BRYGGEN's motion for an order, pursuant to Rules 12(b)(3) and 56 of the Federal Rules of Civil Procedure, 9 U.S.C. §§ 3 and 201 <u>et seq.</u>, and 46 U.S.C. § 1304(5), dismissing or staying plaintiff's claim in keeping with the London arbitration agreement and enjoining litigation of this dispute in Nigeria, or, in the alternative, declaring that any recovery by plaintiff shall be limited to the $500 limitation of liability; and award to BRYGGEN such other and further relief as this Honorable Court may deem just and proper.

Dated:   New York, New York
         October 14, 2005

                                        Respectfully submitted,

                                        MAHONEY & KEANE, LLP
                                        Attorneys for Defendants
                                        BRYGGEN SHIPPING & TRADING A.S.

                            By:         _____
                                        Edward A. Keane (EK 1398)
                                        111 Broadway, Tenth Floor
                                        New York, New York 10006
                                        (212) 385-1422

TO:   HILL RIVKINS & HAYDEN LLP
      Attorneys for Plaintiff
      45 Broadway  Suite 1500
      New York, New York  10006
      (212) 669-0600

12

STATE OF NEW YORK   :
                    :  SS.:
COUNTY OF NEW YORK  :

                    MARIE T. CUSH being sworn says:  I am not a party to the action, am over 18 years of age and reside at 311 Travers Place, Lyndhurst, N.J.

                    On October 14, 2005, I served a true copy of the annexed DEFENDANT BRYGGEN'S REPLY MEMORANDUM OF LAW

TO:   HILL RIVKINS & HAYDEN LLP
      Attorneys for Plaintiff
      45 Broadway  Suite 1500
      New York, NY 10006
      (212) 669-0600

on this date by mailing the same in a sealed envelope, with postage prepaid thereon, in an official depository of the U.S. Postal Service.

                                      ————————————————
                                      MARIE T. CUSH

Sworn to before me this
14th day of October, 2005

————————————————————
      Notary Public

GARTH S. WOLFSON
NOTARY PUBLIC
State of New York No. 02WO5076941
Qualified in New York County
Term Expires  4/38/07