HILL RIVKINS & HAYDEN LLP
Attorneys for Plaintiff
45 Broadway, Suite 1500
New York, New York 10006
Tel: (212)-669-0600
Fax: (212)-669-0699

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

IBETO PETROCHEMICAL INDUSTRIES, LTD.,

        Plaintiff,

vs.

M/T "BEFFEN", her engines, boiler, tackle, equipment, etc., *in rem*, and BRYGGEN SHIPPING AND TRADING A/S, *in personam*,

        Defendants.

---

DOCKET NO.: 05-CV-2590 (SAS)

**REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

PRELIMINARY STATEMENT

For the sake of brevity the Court's attention is respectfully directed to the Preliminary Statement contained in Plaintiff's Memorandum of Law in Support of Motion to Dismiss.

POINT I

THIS CASE HAS NOT MEANINGFULLY PROGRESSED AND DISMISSAL IS APPROPRIATE

Defendants submit that this case should not be dismissed while its alleged dispositive motions remain pending. However, all cases cited by defendant are wholly distinguishable on the facts from the present case. For example, Defendant cites *Phillips*

1

*USA, Inc. v. Allflex USA, Inc.*, 77 F.3d 354, 348 (10th Cir. 1996), as authority, quoting: "[A] party should not be permitted to avoid an adverse decision on a dispositive motion by dismissing a claim without prejudice." However, in *Phillips USA* there was a motion for summary judgment that was outstanding for four months prior to Phillips USA bringing a motion for voluntary dismissal. In addition, there was discovery, and extension of discovery deadlines that were requested and granted. Thus, the facts of that case are wholly inappropriate to analogize to the present dispute wherein the parties were in active negotiations up to August 5, 2005, the answer was only filed August 5, 2005, and the parties submitted cross-motions to dismiss on September 9, 2005, there being no other activity in the case.

Defendant also cites a series of cases quoting *Ex parte Skinner & Eddy Corp.*, 265 U.S. 86, 93-94 (1924): "[W]hen 'the cause has proceeded so far that the defendant is in a position to demand on the pleadings an opportunity to seek affirmative relief…[h]aving been put to the trouble of getting his counter case properly pleaded and ready, he may insist that the cause proceed to a decree.'" However, the Supreme Court noted that this was an exception to the general rule. The Court also said, "[a]t common law a plaintiff has an absolute right to discontinue or dismiss his suit at any stage of the proceedings prior to verdict or judgment, and this right has been declared to be substantial." 265 U.S. at 92-93. "The right to dismiss, if it exists, is absolute. It does not depend on the reasons which the plaintiff offers for his action. The fact that he may not have disclosed all his reasons, or may not have given the real one, cannot affect his right." *Id.*

In those cases where plaintiffs' motions for voluntary dismissal under Rule 41(a)(2) were denied, *inter alia*, the following factors were present: many months had

elapsed, extensive discovery had taken place, motions for summary judgment had been made, or proper counterclaims were raised. *See Zagano v. Fordham University*, 900 F.2d 12, 14 (2d Cir. 1990) (discussing prior cases). Defendant has not in fact moved for affirmative relief. It has merely interposed defenses as counterclaims in a creative twist. On the face of Defendant's "counterclaims" it is apparent that in the absence of Plaintiff's claim for damages Defendant would not be entitled to its own reward against Plaintiffs. Furthermore, Defendant only filed its Answer on August 5, 2005. The only subsequent pleadings were the Defendant Amended Answer, so amended to allege "counterclaims", and the two cross-motions presently before the Court, both filed on September 9, 2005. Clearly, this action is in its infancy and has not progressed meaningfully. There has been no discovery and there is no outstanding motion for summary judgment. Neither party has expended significant resources in this action; consequently there is no legitimate bar to dismissal on this basis.

**Defendant has Mischaracterized the Facts**

Defendant alleges, "the first time plaintiff expressed a willingness to dismiss its claims was in the letter of plaintiff's counsel submitted in response to BRYGGEN's required letter seeking a pre-motion conference…" Defendant's Memorandum of Law in Opposition at 2. Yet the record is more telling. When it became less likely that negotiations would resolve this matter, Plaintiff's counsel unequivocally declared that the matter would be pursued in Nigeria, in a letter to Defendant's representative, Mr. Ian Duthie, dated August 2, 2005. Dalen Decl. ex. 9. In a letter to Mr. Duthie dated August 9, 2005, Plaintiff's counsel reminded Defendant that the matter would be pursued in Nigeria, referring to a conversation of July 11, 2005, wherein the same intention was

conveyed to Mr. Duthie. Dalen Decl. ex. 11. Furthermore, on August 5, 2005, Plaintiff withdrew its London arbitral proceeding consistent with its desire to litigate in Nigeria and abandon the suit in New York. Dalen Decl. ex. 12.

The Defendant insinuates that the pending of the case for five months is somehow blameworthy conduct. However, the Defendant itself only answered on August 5, 2005, the very day that Plaintiff withdrew its arbitration demand. As the Defendant was served pursuant to the Hague Convention (*see* Dalen Decl. ex.'s 4-5), on the assumption that its answer was timely, five months can hardly be considered an unreasonable passage of time. Furthermore, Defendant's counsel is well aware that during the time between the filing of suit and filing of the answer the parties were in continuous and active settlement negotiations, with delays attributable to, *inter alia*, Defendant's representative's requests for documents previously provided. Dalen Decl. ex. 3. In fact, Nigerian attorneys had already secured from the Nigerian Federal Court at least two extensions while the parties negotiated. Dalen Decl. ex.'s 6-8.

Moreover, the parties considered negotiating substitute security for the bond posted in Nigeria with New York jurisdiction but were unable to reach an understanding as to the terms of the agreement. Dalen Decl. ex.'s 1-3. Consistent with these preliminary negotiations Plaintiff desired to protect its time for suit if the parties could agree to New York jurisdiction, but as subsequently happened, such an agreement was never reached. The record is clear that the parties were negotiating up until the very day that Defendant finally filed an answer. Dalen Decl. ex. 9.

## POINT II

## DEFENDANT HAS NOT FILED A "COUNTERCLAIM" AND THE MERE USE OF THIS TERM TO DESCRIBE DEFENSES DOES NOT PREVENT DISMISSAL

Defendant alleges that its "extensive motion for summary judgment on its counter-claims has been fully briefed…" and thus militates against this Court granting a dismissal. Defendant's Memorandum of Law in Opposition at pp. 3-4. This statement is flawed for two reasons. First, to reiterate what has already been fully set forth in Plaintiff's Memorandum of Law in Support of Motion to Dismiss: Defendant has not plead any counterclaims. Second, the Defendant has not moved for summary judgment but has only moved to dismiss or stay. Defendant continuously cites cases in its various memorandums of law that speak as to summary judgment motions preventing a plaintiff's voluntary dismissal, but Defendant has not moved for summary judgment. Thus, Defendant erroneously submits that, "[w]aiting more than five months until after the defendant has moved for summary judgment can hardly be said to demonstrate plaintiff's diligence in bringing the motion." Defendant's Memorandum of Law in Opposition at 4. This statement leaves Plaintiff at a loss as to how to respond. Notwithstanding that five months can hardly be characterized as "undue delay," Plaintiff brought its motion almost immediately after the Defendant's answer and contemporaneously with Defendant's cross-motion to dismiss or stay. Also, Defendant has not moved for summary judgment, and even if it had, its motion could not have been outstanding for five months: Plaintiff's motion papers were filed just over one month after Defendant answered. Plaintiff can only guess that Defendant confused this case with another matter.

Defendant further alleges that it will suffer legal prejudice if this case is dismissed in that it will lose the advantage of U.S. law and London arbitration. However,

Defendant also has a motion to compel arbitration pending before the Nigerian Court. Dalen Decl. cl. 16. While the Plaintiff may hope that Defendant's motion in Nigeria will fail, Defendant previously expressed confidence that such a motion would succeed. Dalen Decl. ex. 9. Thus, Defendant predicted it would suffer no "legal prejudice" in Nigeria. *In rem* security is posted in Nigeria, the Defendant delivered the cargo damaged in Nigeria, and Plaintiff is Nigerian, thus resolution of this dispute in Nigeria can hardly be considered as legally prejudicial. *See* Plaintiff's Memorandum of Law in Support of Motion to Dismiss at pp. 2-3. The suit in Nigeria began long before the present action and would have progressed significantly but for the parties' ensuing negotiations. In fact, both parties' Nigerian counsel cooperated in obtaining extensions from the Nigerian Federal Court, solely for the purpose of progressing towards a mutually acceptable settlement. Dalen Decl. ex. 6.

As Plaintiff withdrew its nomination of an arbitrator in London prior to Defendant joining, it runs the risk that the Nigerian Federal Court will order it to a time-barred proceeding in London. Defendant is free to argue that this dispute is subject to binding arbitration before the Nigerian Federal Court, and its Nigerian counsel has already so moved. Dalen Decl. cl. 16. All defenses and potential arguments by Defendant can be presented to the court in Nigeria where the action was first filed and the motion for dismissal should be granted.

## POINT III

### DEFENDANT'S PLEAS FOR RELIEF ARE NO BAR TO DISMISSAL

Cases cited by Defendant urging that it is entitled to declaratory judgment are not on point. Primarily, *Farrell Lines, Inc. v. Columbus Cello-Poly Corp.*, 32 F.Supp.2d 118

(S.D.N.Y. 1997), *aff'd sub nom.*, *Farrell Lines, Inc. v. Ceres Terminals Inc.*, 161 F.3d 115 (2d Cir. 1998) involved a situation where the defendant sought to bring its claims in Italy but plaintiff successfully filed a declaratory action in the Southern District prior to the defendant bringing an Italian action. There the court granted declaratory relief, ruling that the forum selection clause calling for New York jurisdiction was valid and finding plaintiff's liability limited in accordance with U.S. COGSA. It should be noted that in that case, the court was ruling on a forum selection clause which purported to grant *that very court* jurisdiction and implicating U.S. COGSA, the law of that very forum. Thus public policy considerations weighed strongly in the court's granting declaratory relief.

In this case, there is no similar forum selection clause at issue granting jurisdiction to this Court. In fact there is no connection of this dispute with New York save the offices of the parties' attorneys. There was only the possibility that the parties would reach a mutually acceptable solution, posting of substitute security subject to New York jurisdiction, which in fact failed. Therefore, the underlying policy rationale of *Farrell Lines* is lacking in this case.

Defendant dismisses the case *Capon v. Ladenburg, Thalman Co.*, 92 Fed. Appx. 400, 2004 WL 42380 (9th Cir. 2004), as not supporting Plaintiff's position and confirming its own. However, Defendant misreads the decision and ignores its own prior assertions in its Memorandum of Law in support of its cross-motion. Defendant previously alleged that its request for an order compelling arbitration is a counter-claim. It sought, "…an order declaring that plaintiff's claims are required to be arbitrated in London and enjoining further proceedings in other fora inconsistent with the agreement to arbitrate." *See* Defendant's Amended Answer, *First Counter-Claim*, at 8 (emphasis

added to citation). It was also argued that, "The legitimacy of BRYGGEN's counter-claims are beyond question." *See* Defendant's Memorandum of Law in support of its cross-motion at 13. Now Defendant states, "[t]he Capon defendant merely moved to compel arbitration; there was no counter-claim to consider…" Defendant's Memorandum of Law in Opposition at 8. Defendant then quotes the relevant language from *Capon* which clearly holds that a motion to compel arbitration is *not* a counterclaim, seeming to concede that its arbitration demand is not a counter-claim. Yet Defendant next states, "[c]laims, including counter-claims, to enforce arbitration agreements are specifically authorized by the FAA…" *Id.*

Plaintiff is confused by the argument put forth by Defendant. It seems that Defendant argues that it has counterclaims beyond its motion to compel arbitration (perhaps its alternative motion for a declaration limiting liability to $500), implying that the present facts are distinguishable from *Capon*. Defendant then argues that the motion to compel arbitration *is* a counterclaim. The holding in *Capon* is clear: a motion to compel arbitration is not a "counterclaim." Moreover, Defendant's limitation of liability argument is no more a counterclaim than is its motion to compel arbitration; it seeks no affirmative relief and it is merely a defensive posture. *See Hinfin Realty Corp. v. Pittston Co.*, 206 F.R.D. 350, 354 (E.D.N.Y. 2002); *Kleid v. Ruthbell Coal Co.*, 131 F.2d 372 (2d Cir. 1942).

Since neither titled "counterclaim" seeks affirmative relief, the court, under Rule 8(c) may treat the allegations as if they were correctly labeled defenses, rather than counterclaims, and properly grant plaintiff's motion for a voluntary dismissal pursuant to

8

Rule 41(a)(2). *See* Plaintiff's Memorandum of Law in Support of Motion to Dismiss at Point II.

To the extent Defendant further suggests that *Capon* is inconsistent with Second Circuit precedent in *Farrell Lines*, 161 F.3d 115, Defendant is mistaken. *Farrell Lines* involved a plaintiff seeking to have a forum selection clause, calling for jurisdiction in that very court before which the argument was made, declared valid. There that court was primarily ruling on the exclusivity of *its own* jurisdiction. Here, the Defendant is asking the Court to rule on a forum selection clause in a charter party that it argues is incorporated by reference into a bill of lading, and if binding would call for London arbitration, not jurisdiction in this Court.

## CONCLUSION

Based upon the foregoing plaintiff's motion to dismiss without prejudice should be granted.

Dated:   New York, New York
         October 14, 2005

                              Respectfully submitted,

                              HILL RIVKINS & HAYDEN LLP
                              Attorneys for Plaintiff

                              By: _____
                                  Keith B. Dalen (KD-4997)
                                  45 Broadway, Suite 1500
                                  New York, New York 10006
                                  (212) 669-0600

9