Keith B. Dalen (KD-4997)
HILL RIVKINS & HAYDEN LLP
Attorneys for Plaintiff
45 Broadway, Suite 1500
New York, New York 10006
Tel: (212)-669-0600
Fax: (212)-669-0699

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



_____

IBETO PETROCHEMICAL INDUSTRIES,
LTD.,

               Plaintiff,

      vs.

M/T "BEFFEN", her engines, boiler, tackle,
equipment, etc., *in rem*, and BRYGGEN
SHIPPING AND TRADING A/S, *in
personam*,

               Defendants.

_____

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

DOCKET NO.:  05-CV-2590 (SAS)


**NOTICE OF APPEAL**

*SIRS:*

    *PLEASE TAKE NOTICE* that Plaintiff IBETO PETROCHEMICAL

INDUSTRIES, LTD., hereby appeals from the Opinion and Order of the United States

District Court for the Southern District of New York in the civil action 05-CV-2590

entered November 21, 2005, to the United States Court of Appeals for the Second

Circuit.


Dated:     New York, New York
            December  2 , 2005

HILL RIVKINS & HAYDEN LLP
Attorneys for Plaintiff

By: _____
Keith B. Dalen (KD-4997)
45 Broadway, Suite 1500
New York, New York 10006
(212) 669-0600

To:    MAHONEY & KEANE LLP
       *Attorneys for Defendants*
       111 Broadway, 10th Floor
       New York, NY 10006
       Attn: Garth S. Wolfson, Esq.

2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                                    :
                                                    :
IBETO PETROCHEMICAL                                 :
INDUSTRIES, LTD.,                                   :
                                                    :
                                  Plaintiff,        :
                                                    :
        - against -                                 :
                                                    :
                                                    :
                                                    :
M/T "BEFFEN," her engines, tackle,                  :
boiler, etc., *in rem*; and BRYGGEN                 :
SHIPPING AND TRADING A/S,                           :
*in personam*,                                      :
                                                    :
                                  Defendants.       :
-------------------------------------------------------------X

**OPINION AND ORDER**

**05 Civ. 2590 (SAS)**

SHIRA A. SCHEINDLIN, U.S.D.J.:

## I.    INTRODUCTION

Ibeto Petrochemical Industries, Ltd. ("Ibeto") filed suit against M/T

Beffen ("Beffen") and Bryggen Shipping and Trading (collectively, "defendants")

when base oil shipped by defendants from the United States to Nigeria in the

Beffen allegedly arrived contaminated.[1]  On March 4, 2005, plaintiff filed suit in

this Court for breach of defendants' "duties to the plaintiff as common carrier by

---

[1]      *See* 9/9/05 Declaration of Edward A. Keane, counsel to Bryggen
Shipping and Trading ("Def. Decl.") at 1.

water for hire."[2] Plaintiff now moves for voluntary dismissal of this suit under Federal Rule of Civil Procedure 41(a)(2).[3] Defendants oppose this motion and have filed a motion to dismiss or stay the suit in favor of arbitration in London and to enjoin plaintiff from pursuing the identical claim in Nigeria in a suit plaintiff filed on March 19, 2004.[4] In the alternative, defendants move for a declaration "limiting any recovery by plaintiff to $500 pursuant to the compulsorily applicable COGSA liability limitation."[5]

## II.   BACKGROUND

On February 6, 2004, the Beffen left the Port of Paulsboro, New Jersey carrying base oil on behalf of plaintiff.[6] The shipment was executed via a charter party fixture sent by email from defendants to plaintiff on December 31, 2003,[7] incorporating the contractual provisions of two other documents: the

---

[2]      Complaint at ¶ 1.

[3]      See Plaintiff's Memorandum of Law in Support of Motion to Dismiss ("Pl. Mem.") at 2.

[4]      See Defendants' Memorandum of Law in Support of Motion ("Def. Mem.") at 4.

[5]      Id.

[6]      See Complaint at Schedule A.

[7]      See Charter Party Fixture dated December 31, 2003, Ex. 2B to Def. Mem.

-2-

"Asbatankvoy" and "Chemlube" Terms.[8] When the Beffen arrived in Nigeria on March 5, 2004, the base oil was allegedly contaminated.[9] Plaintiff obtained a bond to secure the boat in Nigeria and notified defendants on March 4, 2005 that it was commencing arbitration;[10] plaintiff filed the instant suit in the Southern District of New York on the same day in order "to protect the time for suit."[11] On August 9, 2005, five months after plaintiff began arbitration proceedings in London, plaintiff notified defendants that it had closed the arbitration and intended to pursue litigation in Nigeria.[12] Plaintiff moved for a Rule 41(a)(2) dismissal of the Complaint in this case on September 9, 2005.[13]

## III. LEGAL STANDARD

### A. Arbitrability

---

[8]    *See* Asbatankvoy Charter Party Terms and Chemlube Charter Party Terms, Exs. 2C and 2D to Def. Mem.

[9]    *See* Plaintiff's Complaint in the Federal High Court Holden at Lagos ¶ 8.

[10]    *See* Letter from Clyde & Co., Ibeto's London Counsel, to Defendants dated March 4, 2005, Ex. 3 to Def. Mem.

[11]    9/9/05 Declaration of Thomas E. Willoughby, Ibeto's Counsel, ¶ 9.

[12]    *See* Letter from Plaintiff's Counsel dated August 9, 2005, Ex. 2E to Def. Mem.

[13]    *See* Pl. Mem. at 2-4.

The determination of whether a dispute is arbitrable under the FAA comprises two questions: "(1) whether there exists a valid agreement to arbitrate at all under the contract in question . . . and if so, (2) whether the particular dispute sought to be arbitrated falls within the scope of the arbitration agreement."[14] To find a valid agreement to arbitrate, a court must apply the "generally accepted principles of contract law."[15] "[A] party is bound by the provisions of a contract that [it] signs, unless [it] can show special circumstances that would relieve [it] of such obligation."[16] It is well established that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to so submit."[17] A court should consider only "whether there was an objective agreement with respect to the entire contract."[18]

Because there is "a strong federal policy favoring arbitration . . . where [] the existence of an arbitration agreement is undisputed, doubts as to

---

[14]    *Hartford Acc. & Indem. Co. v. Swiss Reinsurance Amer. Corp.*, 246 F.3d 219, 226 (2d Cir. 2001) (quotation marks omitted).

[15]    *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 845 (2d Cir. 1987).

[16]    *Id.*

[17]    *AT&T Tech., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648 (1986).

[18]    *Id.*

-4-

whether a claim falls within the scope of that agreement should be resolved in favor of arbitrability."[19] Thus, the Second Circuit has emphasized that

> any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. Accordingly, [f]ederal policy requires us to construe arbitration clauses as broadly as possible. We will compel arbitration unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.[20]

However, although federal policy favors arbitration, it is a matter of consent under the FAA, and "a party cannot be required to submit to arbitration any dispute which [it] has not agreed so to submit."[21]

The Second Circuit has established a three-part inquiry for determining whether a particular dispute falls within the scope of the arbitration agreement.[22] *First*, "a court should classify the particular clause as either broad or narrow."[23] *Second*, if the clause is narrow, "the court must determine whether the

---

[19] *Ace Capital Re Overseas Ltd. v. Central United Life Ins. Co.*, 307 F.3d 24, 28 (2d Cir. 2002) (quotation marks and citations omitted).

[20] *Collins & Aikman Prods. Co. v. Building Sys., Inc.*, 58 F.3d 16, 19 (2d Cir. 1995). *Accord WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 74 (2d Cir. 1997).

[21] *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading, Inc.*, 252 F.3d 218, 224 (2d Cir. 2001) (quotation marks omitted).

[22] *See id.*

[23] *Id.*

dispute is over an issue that 'is on its face within the purview of the clause,' or

over a collateral issue that is somehow connected to the main agreement that

contains the arbitration clause."[24] "Where the arbitration clause is narrow, a

collateral matter will generally be ruled beyond its purview."[25] *Third*, if the

arbitration clause is broad, "there arises a presumption of arbitrability and

arbitration of even a collateral matter will be ordered if the claim alleged

implicates issues of contract construction or the parties' rights and obligations

under it"[26] or "[i]f the allegations underlying the claims 'touch matters' covered by

the parties' agreements."[27] In making this determination, courts must "focus on

the factual allegations in the complaint rather than the legal causes of action

asserted."[28]

### B.    The Standard of Review for a Motion to Enjoin a Foreign Proceeding

---

[24]    *Id.* (quoting *Rochdale Vill., Inc. v. Public Serv. Employees Union,* 605 F.2d 1290, 1295 (2d Cir. 1979)).

[25]    *Id.*

[26]    *Id.*

[27]    *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.,* 369 F.3d 645, 654 (2d Cir. 2004) (quoting *Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Int'l, Inc.,* 198 F.3d 88, 99 (2d Cir. 1999)).

[28]    *JLM Indus. v. Stolt-Nielsen SA,* 387 F.3d 163, 174 (2d Cir. 2004).

"It is beyond question that a federal court may enjoin a party before it from pursuing litigation in a foreign forum."[29]  However, "principles of comity counsel that injunctions restraining foreign litigation be used sparingly and granted only with care and great restraint.  That is because an anti-suit injunction, though directed at the litigants, effectively restricts the jurisdiction of the court of a foreign sovereign."[30]

When determining whether to enjoin a foreign action, a court should consider the relationship between the suit at bar and the suit in the foreign jurisdiction.  "An anti-suit injunction against parallel litigation may be imposed only if: (A) the parties are the same in both matters, and (B) resolution of the case before the enjoining court is dispositive of the action to be enjoined."[31]  If this threshold has been met, the court should also consider the following factors ("*China Trade* factors"):

> (1) frustration of a policy in the enjoining forum; (2) the foreign action would be vexatious; (3) a threat to the issuing court's in rem or quasi in rem jurisdiction; (4) the proceedings in the other forum prejudice other equitable considerations; or (5)

---

[29]    *Paramedics Electromedicina Comercial*, 369 F.3d at 652.

[30]    *LAIF X SPRL v. Axtel, S.A. de C.V.*, 390 F.3d 194, 199 (2d Cir. 2004) (citations and quotation marks omitted).

[31]    *Paramedics Electromedicina Comercial*, 369 F.3d at 652.

-7-

adjudication of the same issues in separate actions would result in delay, inconvenience, expense, inconsistency, or a race to judgment.[32]

"A salient consideration in this case is that, given the federal policy favoring the liberal enforcement of arbitration clauses, an anti-suit injunction may be proper where a party initiates foreign proceedings in an attempt to sidestep arbitration."[33]

### C.    Rule 41(a)(2) and Voluntary Dismissal

Generally, a plaintiff may voluntarily dismiss an action without a court order if it does so before defendant serves its answer, or if it enters into a stipulation of dismissal with all parties.[34]  Here, however, defendants have answered the complaint and oppose plaintiff's motion to dismiss voluntarily.  In such circumstances, "an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper."[35]

The court should permit a Rule 41(a)(2) dismissal only when it will

---

[32]    *China Trade & Dev. Corp. v. M.V. Choong Yong*, 837 F.2d 33, 35 (2d Cir. 1987).

[33]    *LAIF X SPRL*, 390 F.3d at 199.

[34]    *See* Fed. R. Civ. P. 41(a)(1).

[35]    Fed. R. Civ. P. 41(a)(2).

-8-

not prejudice the defendants.[36] "The general rule is settled for the federal tribunals that a plaintiff possesses the unqualified right to dismiss [its] complaint . . . unless some plain legal prejudice will result to the defendant other than the mere prospect of a second litigation upon the subject matter."[37] The exception to this rule is when a defendant has already gone through the effort of pleading counterclaims; when this occurs, defendant "may insist that the cause proceed to a decree."[38]

## IV.   DISCUSSION

### A.   Plaintiff's Motion to Dismiss and Defendants' Motion to Dismiss or Stay and Compel Arbitration

#### 1.   Plaintiff's Motion to Dismiss

Plaintiff has moved for a voluntary dismissal pursuant to Rule 41(a)(2), which permits dismissal after service of defendants' answer with permission of the court.[39] Defendants contest this motion, arguing that because they have asserted counterclaims, Rule 41(a)(2) no longer permits a voluntary

---

[36]   *See Wakefield v. Northern Telecom, Inc.*, 769 F.2d 109, 114 (2d Cir. 1985).

[37]   *Jones v. Securities & Exchange Commission*, 298 U.S. 1, 19 (1936).

[38]   *Id.* at 20 (quotation marks omitted).

[39]   *See* Fed. R. Civ. P. 41(a)(2).

dismissal without prejudice.[40] Defendants instead ask that the Court either dismiss

the case with prejudice or issue a stay and compel arbitration.[41]

Defendants have pled several counterclaims in their Answer to

plaintiff's Complaint: (1) a dismissal or stay of plaintiff's cause of action in favor

of arbitration in London; (2) a declaration that plaintiff's recovery be limited to

$500 pursuant to the Carriage of Goods by Sea Act ("COGSA");[42] and (3) an

injunction against plaintiff's litigation in Nigeria.[43] The presence of these

counterclaims weighs against granting plaintiff's motion to dismiss. Plaintiff

disputes that a motion to compel arbitration can be viewed as a counterclaim,

citing authority from the Ninth Circuit,[44] but motions to compel arbitration have

---

[40]    See id. ("If a counterclaim has been pleaded by a defendant prior to
the service upon the defendant of the plaintiff's motion to dismiss, the action shall
not be dismissed against the defendant's objection unless the counterclaim can
remain pending for independent adjudication by the court.").

[41]    See Def. Mem. at 4.

[42]    See 46 U.S.C. § 1300 et seq.

[43]    See Answer ¶¶ 25, 34.

[44]    See Capon v. Ladenburg, Thalman Co., 92 Fed. Appx. 400, 401 (9th
Cir. 2004) (nonprecedential opinion cited in accordance with Ninth Circuit Rule
36-3) (stating that a motion to compel arbitration is not a substantive
counterclaim).

routinely been considered proper counterclaims in this Circuit.[45]

Plaintiff's intent to litigate this matter in Nigeria also counsels against granting the voluntary dismissal.[46] Under Rule 41(a)(2), if this action is dismissed, defendants' counterclaims must be permitted to stand.[47] Permitting two litigations on the same issues, in this Court and in Nigeria, could result in inconsistent verdicts – "the very risk that the rules of interpleader were created to avoid."[48] Plaintiff's motion to dismiss under Rule 41(a)(2) is therefore denied.

### 2.    Defendants' Motion to Compel Arbitration

Before considering defendants' motion to dismiss or stay this case in favor of arbitration, it is necessary first to determine whether there is an arbitration clause present that is binding on both parties. The Chemlube Terms state that "general average, arbitration [is] to be in London, English law to apply."[49] The

---

[45]    *See Paramedics Electromedicina Comercial*, 369 F.3d at 650; *Westmoreland Capital Corp. v. Findlay*, 100 F.3d 263, 265 (2d Cir. 1996); *Schweizer Aircraft Corp. v. Local 1752, Intern. Union, United Auto., Aerospace & Agric. Implement Workers of Am.*, 29 F.3d 83, 87 (2d Cir. 1994).

[46]    *See* Letter from Plaintiff's Counsel dated August 9, 2005, Ex. 2E to Def. Mem.

[47]    *See* Fed. R. Civ. P. 41(a)(2).

[48]    *Sparta Music Group, Ltd. v. Chrysalis Records, Inc.*, 552 F. Supp. 44, 46 (S.D.N.Y. 1982).

[49]    Chemlube Charter Party Terms, Ex. 2D to Def. Mem. ¶ 23.

-11-

terms of this charter party are invoked in the Charter Party Fixture sent from

defendants to plaintiff via email.[50]   Courts have generally viewed a charter party

fixture sent by fax or telex as fully binding,[51] and it is no great leap to extend this

consideration to fixtures sent by email.   Because the parties are bound by the

Charter Party Fixture, they are also bound by the Chemlube Terms it incorporates

because "a clause in a charter party which provide[s] for arbitration of any and all

differences and disputes of whatsoever nature arising out of this Charter [is]

binding on parties to a bill of lading which incorporate[s] the charter party by

reference."[52]

       Because there is an arbitration clause binding on both parties, the next

consideration is "whether the particular dispute sought to be arbitrated falls within

the scope of the arbitration agreement."[53]   The Chemlube Terms state that "general

average" claims should be arbitrated, but it is difficult to determine if this

---

[50]    *See* Charter Party Fixture dated December 31, 2003, Ex. 2B to Def. Mem. at 2 ("Chemlube Terms as per attached [are] to apply.").

[51]    *See Great Circle Lines, Ltd. v. Matheson & Co., Ltd.,* 681 F.2d 121, 125-26 (2d Cir. 1982); *Stolt Tankers, Inc. v. Marcus Oil & Chem., a Div. of H.R.D. Corp.,* No. 01 Civ. 5291, 2001 WL 1524443, at *2 (S.D.N.Y. Nov. 29, 2001).

[52]    *Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela,* 991 F.2d 42, 48 (2d Cir. 1993) (quotation marks omitted).

[53]    *Hartford Acc. & Indem. Co.,* 246 F.3d at 226.

language should be considered a broad or narrow mandate for arbitration.[54] In a case involving an arbitration clause with similar "general average" language, this Court determined that the clause should be read broadly, "particularly in light of a clear policy favoring arbitration agreements."[55] So given that the language of a "general average" arbitration clause should be read broadly, a claim for negligence falls within the scope of the Chemlube Terms arbitration agreement.

For these reasons and because of the general federal policy favoring arbitration, arbitration must be compelled in this case. The only issue left to consider is whether to grant defendants' motion for a stay or their motion to dismiss this case. When making this determination, the Second Circuit urges district courts to consider the fact that

> a dismissal renders an order appealable under [9 U.S.C.A.] §
> 16(a)(3), while the granting of a stay is an unappealable
> interlocutory order under [9 U.S.C.A.] § 16(b). . . . Unnecessary
> delay of the arbitral process through appellate review is
> disfavored. . . . District courts should continue to be mindful of
> this liberal federal policy favoring arbitration agreements, when
> deciding whether to dismiss an action or instead to grant a stay.[56]

---

[54]    Chemlube Charter Party Terms, Ex. 2D to Def. Mem. ¶ 23.

[55]    *Unisor Steel Corp. v. M/V KONINGSBORG*, No. 03 Civ. 4301, 2004 WL 230910, at *2 (S.D.N.Y. Feb. 6, 2004) (quotation marks omitted).

[56]    *Salim Oleochemicals v. M/V SHROPSHIRE*, 278 F.3d 90, 93 (2d Cir. 2002).

-13-

In keeping with this instruction, "this court has held that once the opposing party

has commenced suit upon any issue referable to arbitration under an agreement in

writing for such arbitration a stay is mandatory."[57]  Therefore, defendants' motion

for a stay and to compel arbitration is granted.

### B.   Motion to Limit Plaintiff's Recovery

Defendants ask that, in the alternative to compelling arbitration,

plaintiff's recovery be limited to $500,[58] as provided under COGSA.[59]  Because

defendants' motion to compel arbitration has been granted, it is not necessary to

reach the issue of limiting plaintiff's recovery.  While COGSA is contractually

incorporated in the Asbatankvoy Terms,[60] under the Chemlube Terms the London

---

[57]     *Marubeni Am. Corp. v. M/V OHFU*, No. 94 Civ. 6251, 1996 WL
84485, at *2 (S.D.N.Y. Feb. 27, 1996).

[58]     *See* Def. Mem. at 11-12.

[59]     *See* 46 U.S.C. § 1304(5) ("Neither the carrier nor the ship shall in any
event be or become liable for any loss or damage to or in connection with the
transportation of goods in an amount exceeding $500 per package lawful money of
the United States, or in case of goods not shipped in packages, per customary
freight unit. . . .").  Because the shipment in this case was listed as a "lumpsum"
unit in the fixture, defendants argue that under COGSA plaintiff's total possible
recovery is limited to $500.

[60]     *See* Asbatankvoy Charter Party Terms, Ex. 2C to Def. Mem. ¶
20(b)(i).

arbitrator is to apply English law,[61] so it will be for the arbitrator to determine

whether and to what extent to apply COGSA. Defendants' motion to limit

plaintiff's recovery is therefore denied.

C.    **Motion to Enjoin Nigerian Litigation**

Defendants also move to enjoin plaintiff's litigation in Nigeria. While

this Court has the power to issue an anti-suit injunction, as noted earlier it should

only do so if "(A) the parties are the same in both matters, and (B) resolution of the

case before the enjoining court is dispositive of the action to be enjoined."[62] Both

of these requirements are met in this case: the same parties are involved in both

this case and in the Nigerian case,[63] and resolution of this case (through arbitration)

will be dispositive of the Nigerian matter.

Once these threshold considerations have been met, the Court must

address the five *China Trade* factors quoted earlier. Several of these factors are

applicable here. *First*, plaintiff's intention to pursue litigation in this foreign forum

as an alternative to arbitration is a "salient consideration in this case . . . given the

---

[61]    *See* Chemlube Charter Party Terms, Ex. 2D to Def. Mem. ¶ 23.

[62]    *Paramedics Electromedicina Comercial*, 369 F.3d at 652.

[63]    *See* Plaintiff's Statement of Claim in the Federal High Court at Lagos, Ex. 5 to Def. Mem.

-15-

federal policy favoring the liberal enforcement of arbitration clauses."[64] Permitting the Nigerian litigation to continue may frustrate the general federal policy of promoting arbitration. *Second*, while pursuit of parallel cases is not prima facie evidence of vexatiousness,[65] the fact that the Nigerian court will not apply the principles of COGSA[66] may result in widely disparate results in these two actions. This potential disparity, and the race to judgment that it could provoke, weigh in favor of an anti-suit injunction. *Third*, equitable considerations involved, such as deterring forum shopping, also compel enjoining the foreign action. *Fourth*, it is likely that adjudication of the same issues in two separate actions would result in inconvenience, inconsistency, and a possible race to judgement. As discussed above, given that COGSA may be applicable in the London arbitration but not in the Nigerian action, the outcomes could be inconsistent. Also, because the witnesses and evidence in both actions would likely be the same, there could be considerable inconvenience in shuttling witnesses between the venues for these

---

[64]    *LAIF X SPRL*, 390 F.3d at 199 (citations and quotation marks omitted).

[65]    *See Stonington Partners, Inc. v. Lernout & Hauspie Speech Prods. N.V.*, 310 F.3d 118, 127 (3d Cir. 2002).

[66]    *See* Declaration of Babajide Koku, Nigerian barrister and solicitor, Ex. 4 to Def. Mem. ¶ 4.

-16-

two actions. With regard to the last issue – threat to jurisdiction – neither action is strongly favored, as both courts have in personam jurisdiction over the parties. However, given that the four other *China Trade* factors are met, defendants' motion to enjoin the Nigerian action is granted.

## V.    CONCLUSION

For the reasons set forth above, defendants' motions to stay this case, to compel arbitration, and to enjoin the Nigerian action are granted. Plaintiff's motion for voluntary dismissal under Rule 41(a)(2) is denied, and defendants' motion to limit plaintiff's recovery is also denied. The Clerk of the Court is directed to close these motions [Docket #9 & #10].

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:    New York, New York
          November 21, 2005

-17-

- Appearances -

**For Plaintiff:**

Keith B. Dalen, Esq.
Hill Rivkins & Hayden LLP
45 Broadway, Suite 1550
New York, New York 10006
(212) 669-0698

**For Defendants:**

Garth S. Wolfson, Esq.
Mahoney & Keane LLP
111 Broadway, 10th Floor
New York, New York 10006
(212) 385-1422

-18-